[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13878
Non-Argument Calendar

_____

Agency Nos. A79-512-799
A79-512-800

PABLO EMILIO TORRES,
VIRGINIA SILVA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 26, 2007)**

Before BIRCH, WILSON and FAY, Circuit Judges.

PER CURIAM:

Lead petitioner Pablo Emilio Torres, a native and citizen of Colombia, petitions this Court on behalf of himself and his wife Virginia Silva, also a native and citizen of Colombia, for review of the Board of Immigration Appeals' ("BIA") affirmance of the immigration judge's ("IJ") decision denying his applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16. Torres argues that substantial evidence in the record supported his assertion that he suffered past persecution or had a well-founded fear of future persecution in Colombia on account of his membership in a social group and his political opinion. For the reasons set forth more fully below, we deny Torres's petition for review.

Torres entered the United States on March 11, 2000 and his wife entered on June 11, 2000 as visitors for pleasure. Torres and his wife had authorization to remain until June 30, 2001 and September 10, 2000, respectively. The petitioners remained beyond their authorized dates and the former Immigration and Naturalization Service ("INS")[1] issued them notices to appear, charging them with removability pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

In the petitioners' application for asylum and withholding of removal, Torres indicated that he worked in Colombia as a general manager for

---

[1]The INS was abolished on March 1, 2003, and replaced with the Department of Homeland Security ("DHS"). See Homeland Security Act, Pub.L.No. 107-296 (Nov. 25, 2002), 116 Stat. 2135. This case, however, was initiated while the INS was still in existence.

"Cooperativa El Penol," which was an institution that provided services to a labor union. He stated that he was detained in roadblocks several times by the Revolutionary Armed Forces of Colombia ("FARC"). He further related three incidences of kidnapings: (1) the FARC kidnaped Torres's co-workers and friends in Medellin, Colombia; (2) the FARC kidnaped three more of Torres's co-workers between La Union and Mesopotamia, but Torres was in another vehicle and was not kidnaped; and (3) Torres's son was kidnaped for "a whole day" and was released when the company for which his son worked paid a ransom. Torres also stated that he received threatening phone calls from the FARC, moved three times to avoid capture by the FARC, and constantly changed his vehicles and routes to work. He stated that he "lived a nightmare between December 1999 and March 2000," and further that, in March 2000, the FARC destroyed an electrical station and killed the mayor of El Penol. Torres indicated that he had been a member of "Cooperative 'El Panol,'" which was an institution that gave assistance and services to farm workers, and that he had suffered mistreatment as a result of his membership in a particular social group and his political opinion.

At the removal hearing, Torres testified that he worked for the "El Penyon Cooperative" while in Colombia. Torres believed that his life was in danger because he was threatened by the FARC on two occasions. On December 20, 1997, Torres's car was broken into and documents were removed from it. Torres

stated that "common criminals" committed the car robbery, but that the "common criminals" were the armed branches of the FARC. He further testified that, on August 2, 1999, the FARC destroyed an electrical station and on August 7, 1999, the FARC killed the mayor of El Penyon. After that incident, a person in Torres's town warned him not to "stick [his] nose in this, if [he] want[ed] . . . to continue to breath[e]." Torres stated that the person did not identify himself as a member of the FARC or any other group, but that was the way that such groups operated.

Torres further testified that 27 workers and 3 engineers went to repair the damage done by the FARC's destruction of the electrical station and they were all kidnaped by the FARC. Torres knew that they had been kidnaped by the FARC because the FARC "always rectify every time we have an action." The next incident that Torres experienced occurred in November of an unknown year. Torres traveled through a roadblock at 5:00 am and the three engineers who followed him encountered the roadblock at 8:30 am. The three engineers were kidnaped from the roadblock, but Torres passed safely because he had "gone ahead . . . and . . . was in a different car." Torres also stated that, on January 20, 2000, he was intercepted by four gunmen while driving in Colombia. The men tried to open the door, blew their horn, and shouted that if they saw Torres in that area again, he would "suffer an accident." Thereafter, Torres moved to four different apartments to avoid threatening phone calls that he received. Torres testified that he received

4

two threatening phone calls and moved after each call. He also changed his vehicles and driving routes. Torres stated that he believed the FARC wanted to kill him because of his "ideas . . . and what [he] spoke," and for his direct contact with the peasants. On cross-examination, Torres testified that the car break-in occurred a day after the assassination of the mayor of El Penyon, which Torres stated was in August 1999.

In support of his application, Torres submitted a copy of the police report that he filed after the car break-in he suffered in 1997.[2] According to the police report, the thieves took numerous items from the car, including a check in Torres's name for one million pesos. Torres indicated in the report that there were no witnesses to the crime and he did not specify whether he knew the identities of the thieves.

The government submitted the 2004 United States Department of State Country Report on Human Rights Practices in Colombia ("Country Report"). The Country Report indicated that the FARC were responsible for numerous civilian deaths, kidnapings, and torture throughout Colombia. In 2004, most attacks on infrastructure in Colombia affected roads, electrical towers, and oil pipelines. The FARC also committed acts of violence against government officials, including the

---

[2]Torres submitted various other documents not relevant to this appeal. (See AR at 158-73, 180-82).

kidnaping and killing of several mayors. The Country Report further indicated that union leaders and workers were also threatened and killed by paramilitary groups in a "'persistent climate of violence' in the country."

The IJ denied the petitioners' applications for asylum and withholding of removal, but granted them voluntary departure with an alternate order of removal to Colombia. In an oral decision, the IJ found that Torres did not provide a credible or sufficient claim of past persecution or a well-founded fear of future persecution on account of any statutorily protected ground. As support for the adverse credibility finding, the IJ identified the following inconsistencies between Torres's asylum application form, his testimony, and his documentary evidence: (1) Torres indicated in his asylum application that he had been detained at roadblocks several times, but he testified only to one roadblock experience during which he passed through the roadblock without being detained; (2) Torres did not mention during his testimony that engineers or workers from his company had been killed or that his son had been kidnaped, as he had stated in his asylum application; (3) Torres's asylum application did not include the car break-in incident about which Torres testified; and (4) Torres testified that the car break-in occurred around the same time as the assassination of the mayor of El Penyon, but he submitted a police report of the break-in that was dated December 1997, his application indicated that the assassination occurred in March 2000, and he

6

testified on cross-examination that the assassination occurred in August 1999.  The IJ thus concluded that Torres failed to present a consistent, specific, or detailed account of what happened to him in Colombia.  The IJ also noted that Torres did not provide any evidence that he was detained or harmed in any way by the Colombian government or any group beyond the government's control.  (Id.).

The IJ further found that, even assuming that Torres had presented credible evidence of the harm he experienced in Colombia, Torres did not establish that he was a member of any particular social group or that he had a particular political opinion for which he experienced persecution.  The IJ determined that, if Torres was running from the conditions in his country, those conditions were generalized throughout Colombia and were not unique to Torres or his family.  The IJ therefore denied Torres and his wife's applications for asylum and withholding of removal.

Torres appealed the IJ's decision to the BIA, arguing that his testimony and documentary evidence sufficiently established that he suffered past persecution and had a well-founded fear of future persecution in Colombia on account of his membership in a particular social group.  Torres maintained that the FARC harassed and threatened him due to his work with poor communities and his political ideas.

The BIA adopted and affirmed the IJ's decision.  Specifically, the BIA found no error in the IJ's determination that Torres had failed to establish his

7

membership in a particular social group or that he was persecuted because of such membership. The BIA also found that Torres's arguments on appeal were insufficient to demonstrate clear error in the IJ's adverse credibility determination. The BIA thus agreed with the IJ that Torres did not establish eligibility for asylum or withholding of removal.

Torres argues on appeal that the IJ erroneously denied him asylum or withholding of removal. Torres maintains his case represents a case of persecution on the basis of mixed motives because he was persecuted by the FARC due to his work helping peasants and his imputed political opinion that he was against the FARC. He asserts that the IJ erred in failing to evaluate his case under the mixed-motives framework. He further contends that he presented clear evidence of the past persecution he suffered in Colombia. As to the IJ's determination that Torres's testimony and asylum application were inconsistent, Torres argues that the IJ erred because Torres testified to two roadblock experiences, rather than only one as the IJ found, and any inconsistencies were inconsequential.

When the BIA issues a decision, we review only that decision, except to the extent the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. Here, the BIA adopted the IJ's reasoning and included its own remarks. Thus, we review both the IJ's and BIA's

8

decisions.

To the extent that the IJ's and the BIA's decisions were based on legal determinations, our review is de novo. D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 817 (11th Cir. 2004). The IJ's and BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (quotation omitted). Therefore, a finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 125 S.Ct. 2245 (2005); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . ."). Likewise, a credibility determination is reviewed under the substantial evidence test, and "this [C]ourt may not substitute its judgment for that of the BIA with respect to credibility findings." D-Muhumed, 388 F.3d at 818.

To establish eligibility for asylum, the petitioner has the burden of proving that he is a "refugee," which is defined as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or

9

> unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion

8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A); see also Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). If the petitioner establishes past persecution, there is a rebuttable presumption that the petitioner has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). However, where the petitioner cannot demonstrate past persecution, he may establish a well-founded fear of future persecution by showing that his "fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution. . . . In most cases, the objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (citation and quotation omitted).

However, the petitioner's past persecution or well-founded fear of future persecution must be on account of a protected activity. See Forgue, 401 F.3d at 1286. "In order to demonstrate a sufficient connection between future persecution and the protected activity, an alien is required to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such a protected activity." Id. (quotation omitted) (emphasis in

10

original).  "Thus, evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground."  Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006).

"The testimony of an applicant, if found to be credible, is alone sufficient to establish" eligibility for asylum.  Id. at 1287 (citing, inter alia, 8 C.F.R. §§ 208.13(a), 208.16(b), which, respectively, refer to asylum and withholding of removal).  Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishment as the applicant repeatedly recounts his story.  See In re B-, 21 I&N Dec. 66, 70 (BIA 1995) (persuasive authority); see also Dalide v. U.S. Attorney Gen., 387 F.3d 1335, 1343 (11th Cir. 2004) (affirming the BIA's adverse credibility determination, which was based upon its finding that the applicant's testimony conflicted with his answers to interrogatories, affidavit, deposition, and other documentary evidence).  Although uncorroborated but credible testimony may be sufficient to sustain an applicant's burden of proving eligibility for asylum, "[t]he weaker an applicant's testimony, however, the greater the need for corroborative evidence."  Yang v. U.S. Attorney Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).  The IJ must make "clean determinations of credibility."  Id. (quotation

omitted).  Further, "an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant," and the IJ must provide "specific, cogent reasons" for her credibility finding.  Forgue, 401 F.3d at 1287.  Nevertheless, when the IJ enumerates an applicant's inconsistencies and is supported by the record, "we will not substitute our judgment for that of the IJ with respect to its credibility findings."  D-Muhumed, 388 F.3d at 819.

To establish eligibility for withholding of removal, the petitioner must meet a standard more stringent than the "well-founded fear" asylum standard, and "show that h[is] life or freedom would 'more likely than not' be threatened upon return to h[is] country because of, among other things, his political opinion."  Huang v. U.S. Attorney Gen., 429 F.3d 1002, 1010-11 (11th Cir. 2005) (citing Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) and INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A)).  Thus, an applicant who is unable to meet the standard for asylum is also unable to meet the more stringent standard for withholding of removal.  Huang, 429 F.3d at 1011 (citing Al Najjar, 257 F.3d at 1292-93).

In Torres's case, the IJ first found his claim of persecution incredible, and second found that, even assuming Torres's claims of the harm he suffered were credible, they did not establish that he suffered past persecution or that he had a well-founded fear of future persecution on account of a statutorily protected ground.  Substantial evidence in the record supports both of the IJ's findings.  As

12

to the adverse credibility determination, there were several inconsistencies between Torres's asylum application, documentary evidence, and testimony in the record. First, Torres omitted from his asylum application the following incidents to which he testified at his hearing: (1) the car break-in and robbery that he suffered in December 1997; (2) the threat from an unidentified individual that Torres should not "stick [his] nose in this, if [he] want[ed] . . . to continue to breath[e];" and (3) the threat from the four gunman who approached Torres while he was driving. Second, Torres detailed the following facts in his asylum application, but made no mention of them during his testimony: (1) that his son was kidnaped by the FARC, detained for an entire day, and was released when his son's company paid a ransom; and (2) that his co-workers were not only kidnaped, but some were killed. Finally, the number of roadblocks in which Torres was detained, or whether he was detained at all, is unclear because he indicated in his application that he was detained in several roadblocks, but he testified in detail to one roadblock at which he was not detained. Given the many omissions and discrepancies in the record, substantial evidence supports the IJ's adverse credibility finding.

Furthermore, assuming without deciding - as did the IJ - that the incidents that Torres detailed actually occurred, Torres failed to establish that he was persecuted on account of his membership in a social group or his political opinion. Torres argues that he was persecuted because he helped the poor people of

13

Colombia and the FARC believed he possessed an adverse political opinion to their own. However, Torres did not provide proof of membership in any particular social group or political party, or any other evidence that the FARC harmed or threatened him due to his social membership or political opinion. Moreover, there is no evidence in the record that Torres suffered unique persecution by the FARC, as opposed to generalized harassment that can be suffered by any Colombian. See Ruiz, 440 F.3d at 1258 ("evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground"). Thus, substantial evidence supports the IJ's second finding that Torres failed to demonstrate that he suffered past persecution or had a well-founded fear of future persecution on account of a statutorily protected ground.

With regard to Torres's argument that he was also eligible for withholding of removal, that argument is without merit. As noted above, the standard for eligibility for withholding of removal is more stringent than that for asylum. See Huang, 429 F.3d at 1010-11. Here, Torres did not demonstrate his eligibility for asylum because he did not credibly establish that he suffered past persecution or had a well-founded fear of future persecution on account of a protected ground. As such, Torres also cannot demonstrate that his life or freedom would more likely

14

than not be threatened upon his return to Colombia because of his membership in a particular social group or his political opinion.  See <u>Huang</u>, 429 F.3d at 1011 (explaining that an applicant who is unable to meet the standard for asylum is also unable to meet the more stringent standard for withholding of removal).

For all the foregoing reasons, the IJ's finding that Torres did not credibly establish his eligibility for asylum or withholding of removal on account of a statutorily protected ground is supported by substantial evidence in the record. Accordingly, his petition for review is

**DENIED.**